**SIGNED THIS: January 25, 2008**

                                                               **MARY P. GORMAN**
                                        **UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| In Re: | ) | |
|---|---|---|
| | ) | In Bankruptcy |
| VANCIL CONTRACTING, INC., | ) | |
| | ) | Case No. 06-71254 |
| Debtor. | ) | |

# O P I N I O N

This matter is before the Court on the Third Application for Payment of Professional Fees - Attorney ("Third Application") filed on October 23, 2007, by Vancil Contracting, Inc. ("Debtor") by its attorneys, Scott & Scott, P.C. ("Scott & Scott"), and the Objection thereto filed on December 5, 2007, by Thomas J. Power, assignee of R.J. Power Plumbing and Heating, Co. ("Power"). Power is a creditor of Debtor and is chairman of the unsecured creditors' committee. Debtor has filed a Response to the Objection, and Power

has filed a Memorandum in support of its Objection. The matter was heard and argued on December 18, 2007, and was taken under advisement at the conclusion of the hearing.

On September 18, 2006, Debtor filed its Chapter 11 petition in bankruptcy. On September 22, 2006, Scott & Scott filed an Application to be employed as attorneys for Debtor, and this Court entered an Order granting that Application on October 13, 2006. On January 22, 2007, Debtor filed a Chapter 11 Plan of Reorganization. An Amended Plan was filed on April 17, 2007, to which 14 objections were filed. On December 6, 2007, Debtor filed its Second Amended Chapter 11 Plan. A plan of reorganization has yet to be confirmed. The Court has previously allowed two applications for payment of professional fees and costs advanced filed by Scott & Scott in this case. The Court entered an Order on May 3, 2007, allowing Scott & Scott's first application in the amount of $45,309.57 for attorney fees and costs incurred from August 14, 2006, through January 25, 2007. The Court also entered an Order on July 11, 2007, allowing Scott & Scott's second application in the amount of $16,599.41 for attorney fees and costs incurred from January 29, 2007, through May 25, 2007. According to the Third Application, which is presently before the Court, Debtor has paid $27,057.91 to Scott & Scott toward amounts previously approved by the Court.

In the Third Application, Debtor applies for approval of payment of professional fees to Scott & Scott in the amount of

$19,394.15 plus costs advanced of $491.80, for total of $19,885.95. The attorney fees were incurred from May 29, 2007, to September 25, 2007, and the costs were incurred from June 25, 2007, to September 25, 2007.

Section 327 of the Bankruptcy Code provides for the employment, with the court's approval, of disinterested professional persons by the trustee to represent or assist the trustee in carrying out the trustee's duties. 11 U.S.C. §327(a). A debtor in a Chapter 11 case has the rights, powers, and duties of a trustee, unless and until the court affirmatively orders the appointment of a trustee. Id.; In re Luria Steel & Trading Corp., 168 B.R. 913, 915-16 (Bankr. N.D. Ill. 1994), *aff'd* 189 B.R. 418 (N.D. Ill. 1995).

Section 330(a) of the Bankruptcy Code provides in pertinent part as follows:

> (a)(1)   After notice . . . and a hearing, the court may award to a . . . professional person employed under section 327 . . . -
>
>> (A)   reasonable compensation for actual, necessary services rendered . . .; and
>>
>> (B)   reimbursement for actual, necessary expenses.
>
> (2)   The court may, on its own motion . . . award compensation that is less than the amount of compensation that is requested.
>
> (3)   In determining the amount of reasonable compensation to be awarded . . ., the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors,

including–

    (A)  the time spent on such services;

    (B)  the rates charged for such services;

    (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

    (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

    (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

    (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

(4)(A)  [With exceptions not relevant here,] [T]he court shall not allow compensation for –

    (i) unnecessary duplication of services; or

    (ii) services that were not –

        (I)  reasonably likely to benefit the debtor's estate; or

        (II)  necessary to the administration of the case.

11 U.S.C. §330(a).

Federal Rule of Bankruptcy Procedure 2016(a) provides in pertinent part as follows:

    (a)  An entity seeking interim or final compensation

> for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) services rendered, time expended and expenses incurred, and (2) the amounts requested . . . .

Fed.R.Bankr.P. 2016(a).

Once a professional is properly employed, but before fees or costs can be paid, there must be a fee application filed with the court which details the work done and expenses advanced for which compensation is sought. In fact, before performing any service, the attorney should first scrupulously weigh and assess the necessity and appropriateness of each task for which the attorney will be seeking compensation. In re Wildman, 72 B.R. 700, 707 (Bankr. N.D. Ill. 1987).

The court has a duty to examine independently the reasonableness of fees requested. In re Price, 143 B.R. 190, 192 (Bankr. N.D. Ill. 1992) *aff'd* 176 B.R. 807 (N.D. Ill. 1993), *aff'd and remanded* 42 F.3d 1068 (7th Cir. 1994); In re Wyslak, 94 B.R. 540, 541 (Bankr. N.D. Ill. 1988); In re Chicago Lutheran Hospital Association, 89 B.R. 719, 734-35 (Bankr. N.D. Ill. 1988); In re Pettibone Corp., 74 B.R. 293, 299-300 (Bankr. N.D. Ill. 1987); Wildman, 72 B.R. *at* 705. The burden of proof to show entitlement to the fees requested is on the applicant. Price, 143 B.R. *at* 192; In re Kenneth Leventhal & Co., 19 F.3d 1174, 1177 (7th Cir. 1994); In re Spanjer Bros., Inc., 191 B.R. 738, 747 (Bankr. N.D. Ill. 1996); In re Stoecker, 114 B.R. 965, 969 (Bankr. N.D. Ill. 1990);

Pettibone, 74 B.R. *at* 299; In re Lindberg Products, Inc., 50 B.R. 220, 221 (Bankr. N.D. Ill. 1985).

The main objective of a fee application is to disclose sufficient information to enable the court to assess whether the services enumerated thereon were reasonable, actual, and necessary. Wildman, 72 B.R. *at* 707-08. In assessing the reasonableness of a requested fee, this Court (and the vast majority of others) continues to utilize, in conjunction with the provisions of §330(a) of the Bankruptcy Code, the twelve factors set forth in the seminal case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974), which are:

1. The time and labor required;

2. The novelty and difficulty of the question;

3. The skill necessary to perform the legal services properly;

4. The preclusion of other employment by the attorney due to acceptance of the case;

5. The customary fee for similar work in the community;

6. Whether the fee is fixed or contingent;

7. Time limitations imposed by the client or the circumstances;

8. The amounts involved and the results obtained;

9. The experience, reputation, and ability of the attorneys;

10. The "undesirability" of the case;

11. The nature and length of the professional relationship with the client; and

    12.  Awards in similar cases.

Id. *at* 717-19.  *See also* In re Freidinger, 2002 WL 32001241 *6 (Bankr. C.D. Ill.); In re East Peoria Hotel Corp., 145 B.R. 956, 960 (Bankr. C.D. Ill. 1991).

    With respect to the itemization, a fee application must disclose the name of the person performing the service, the rate being charged, and the date the service was provided.  Pettibone, 74 B.R. *at* 301; Lindberg, 50 B.R. *at* 221-22.  The itemization must also provide a description of the nature and substance of the work performed as well as the time spent on the work.  Pettibone, 74 B.R. *at* 301; Lindberg, 50 B.R. *at* 221-22.  Services should be itemized in a logical, concise, and chronological manner. Generally, there should be a narrative description of the case, including some discussion of particular problems encountered, how these problems were solved, and what results were achieved.  Id. *at* 305; *see also* Wildman, 72 B.R. *at* 707 ("These *detailed* applications establish the 'actual,' while an accompanying narrative explanation of the 'how' and 'why' establishes the 'necessary[,]'" (emphasis in original), regarding the requirements of Rule 2016); In re Wire Cloth Products, Inc., 130 B.R. 798, 806 (Bankr. N.D. Ill. 1991) ("The record-keeping requirement will generally be satisfied if the court can from the application and accompanying narrative pass on all aspects of services performed.").  In addition, the practice of categorization of fees by particular matter, *e.g.* adversary

-7-

matters, asset sales, etc., makes the assessment of the reasonableness of fees much easier and more accurate.

Records which give no explanation of the activities performed are not compensable. Wildman, 72 B.R. *at* 708 ("Without accurate detailed time records the court lacks any objective basis for making a fee award."); In re Wiedau's, Inc., 78 B.R. 904, 907-08 (Bankr. S.D. Ill. 1987). An entry of "telephone call" or even "telephone call with x" is insufficient. Pettibone, 74 B.R. *at* 301. An entry of "conference" or "meeting", "conference with x" or "conversation with x" is insufficient. Id.; Price, 143 B.R. *at* 195. Entries of "research", "legal research", or "bankruptcy research" are insufficient. Pettibone, 74 B.R. *at* 302. The nature and purpose of the legal research and for what matter it will be used should be noted. Id.

The actual time spent on a task should be recorded. Id. Small amounts of time should not be uniformly recorded as a minimum block of time, *e.g.* .25 of an hour for the reception of any communication or for a short telephone conversation. Applicants may not circumvent the minimum time requirement or any of the requirements of detail by "lumping" several activities into a single entry. Id. If abbreviations are used in the itemized daily entries, they must be explained somewhere in the application. Id.

Senior partner rates are appropriate only for services which warrant the time and attention of a senior partner. In re

Continental Illinois Securities Litigation, 572 F. Supp. 931, 933 (N.D. Ill. 1983); Pettibone, 74 B.R. *at* 303.  If a senior partner spends time doing tasks that a beginning associate could do, the partner will be paid at the rate of a beginning associate. Continental, 572 F. Supp. *at* 933; Pettibone, 74 B.R. *at* 303. Attorneys who apply for compensation are presumed to have an adequate background in bankruptcy law.  *See* Continental, 572 F. Supp. *at* 933; Pettibone, 74 B.R. *at* 303.  Clearly, circumstances will arise which require research; however, no fees should be allowed for general research on areas of the law which should be well-known to bankruptcy practitioners.  *See* Continental, 572 F. Supp. *at* 933; Pettibone, 74 B.R. *at* 303.

The Court is to determine what is the reasonable amount of time counsel should have to spend on a given project.  Id. *at* 306. Inefficiency will not be rewarded, nor will counsel be compensated for expending an unreasonable amount of time on activities of little benefit to the estate.  Id.; Wire Cloth Products, 130 B.R. *at* 806.  Compensation is not allowable where there is a duplication of services; such services are unnecessary.  Pettibone, 74 B.R. *at* 307.  Examples of the types of services for which only one attorney will be compensated are:  (i) conferences, (ii) court appearances, and (iii) attending depositions or Rule 2004 examinations. Wiedau's, 78 B.R. *at* 908.  While some conferring may be necessary, fees for only one attorney are allowable unless an adequate

explanation of the necessity of each attorney's participation is provided.  Id.  When more than one attorney appears in court for a hearing, no fee should be sought for the non-participating attorney, and this rule may not be circumvented by merely rotating or taking turns participating in a single appearance.  Id.

With respect to the Third Application before the Court, the Court can ascertain - because of the size of the law firm - the identity of the attorney performing each itemized service by the initials noted therewith.  However, as stated above, the case law requires that, when abbreviations are used, the itemization set forth outright what those abbreviations stand for, and that would include initials.  Similarly, as to the hourly rates being charged, the Court gathers, by doing the math, that Mr. Scott charges $215 per hour, Mr. Enlow charges $190 per hour, and Mr. Germeraad charges $145 per hour, although this is not explicitly stated anywhere.  It should be.  Finally, the Court has a general awareness of the practice experience, level of expertise in Chapter 11 bankruptcy matters, and position within the law firm of each attorney at Scott & Scott involved in this case.  However, because this information is essential for evaluating a fee application, the Court will require that this information be explicitly stated in all future fee applications.

There is no objection to the hourly rates being charged by the Scott & Scott attorneys, and the Court finds the rates being

charged here to be reasonable. In addition, the overall amount of time expended on this case during the time period for which compensation is sought appears to be within the realm of reasonableness. However, it bears reiteration that breaking down the itemization by category makes the evaluation of the reasonableness of attorney fees easier and more accurate, and the Court will require categorization in all future fee applications.

In general, it appears that the attorneys at Scott & Scott itemize their time in quarter-hour increments, with very few exceptions. As stated above, the case law prohibits fee applicants from uniformly recording small amounts of time as a minimum block of time. It appears that there are instances in this itemization where that mandate was not followed. In addition, there are entries in which a number of tasks are described, but then "lumped" together in one time entry. This practice makes the Court's job of determining the reasonableness of fees difficult, if not impossible.

Examples of individual entries which are problematic include the following: On June 6, 2007, Mr. Scott and Mr. Enlow both billed for attending a conference with the principals of Debtor. It is not demonstrated - and cannot be presumed - that the attendance of both attorneys at the conference was merited. A lumped entry of June 8, 2007, for five hours of time for Mr. Germeraad included "multiple conferences with RSS (Mr. Scott)".

Again, there is no evidence, nor can it be presumed, that multiple intraoffice conferences in a given day are appropriate, or that the fees arising therefrom are reasonable.  Further, because this five-hour entry is a lumped entry, the Court has no idea whether the aggregate time spent in conference, as opposed to having been spent on the other tasks described in the "lump", was ten minutes or four hours.

There are also occasions when both Mr. Enlow and Mr. Scott billed for appearing in the same court for the same hearing.  Without any assertion, evidence, or argument that the presence of both attorneys was merited or mandated, the Court would generally be unable to find that the fees generated by two attorneys for a single court appearance are reasonable.

Power asserts that the results generated in this case thus far merit the denial, or at the least the holding in abeyance of a ruling on the reasonableness, of the fees being sought.  As indicated above, no Chapter 11 plan has been confirmed in this case, so it is unclear what the future of the Debtor will be, and it is unclear in what position the creditors in this case will be left.  However, debtors are entitled to representation, and the lack of a confirmed Chapter 11 plan at this point is not necessarily indicative of a lack of success in this case.  Similarly, a lack of success to date - though a valid factor for consideration - is not, by itself, a controlling factor on the

reasonableness of fees being sought.  In this case, a large portion of the fees which have been previously awarded to Scott & Scott have so far gone unpaid.  Hence, a lack of success and/or progress in this case may well result in the fees not actually being paid. Further, it should be noted that any award of fees made at this time is done on an interim basis, and is subject to further review by this Court when the results and successes or failures can be better assessed.  *See* In re Firstmark Corp., 46 F.3d 653, 659 (7th Cir. 1995); In re Firstmark Corp., 132 F.3d 1179, 1181 (7th Cir. 1997).

Section 506(c) of the Bankruptcy Code provides in part as follows:

> (c)  The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. . .(.)

11 U.S.C. §506(c).

Power has requested - and the Debtor has acquiesced - that any fees awarded to Scott & Scott cannot be surcharged against any secured creditor under §506(c).  Accordingly, the Court will prohibit such surcharging. As an aside, because the itemization in this case fails to identify and break down time into specific project categories, it would be virtually impossible for the Court to ascertain what fees could or should be surcharged under §506(c), even if such a request had been made and allowed.

Because this is the Court's first written Opinion on the subject of fee applications/itemizations, the Court does not intend to hold Scott & Scott, in this instance, to a standard which has not necessarily been the practice of previous judges in this Court in the past.  The Court has carefully reviewed the Third Application and, despite the defects set forth above, the Court will find that the fees requested are reasonable and that an order should be entered accordingly.  This Opinion shall constitute notice, however, to all attorneys who practice before this Court that fee applications and itemizations must, from this day forward, meet the requirements of the Bankruptcy Code and Rules, the case law, and as set forth herein in order for professional fees requested to be allowed.

With regard to expense reimbursement, a fee application should include a detailed itemization of the expenses for which reimbursement is sought, including the date the expense was incurred, the type of expense, and the amount. Wildman, 72 B.R. *at* 731.  Expenses should be listed separately from legal fees.  An expense is necessary, so as to warrant reimbursement, if the expense was incurred because it was required to accomplish proper representation of the client. Id.; In re Palladino, 267 B.R. 825, 833-34 (Bankr. N.D. Ill. 2001).  Reimbursement is allowed for the precise expenses incurred, including only claims for fully-documented, actual, out-of-pocket expenses. Wildman, 72 B.R. *at*

731.

Expenses which fall under the heading of general office overhead are not reimbursable. Id.; In re Convent Guardian Corp., 103 B.R. 937, 939 (Bankr. N.D. Ill. 1989). These include routine photocopying, incidental postage (including overnight mailing), use of a fax machine, law office software, secretarial services, and general office supplies. Expenses for legal research from services such as Westlaw or Lexis for use of and access to common databases, such as Illinois statutes and cases, and federal bankruptcy statutes and cases, are also considered part of general overhead. Where a case presents a unique issue for which the attorney requires access to a database not regularly used by such attorney, related itemized charges may be reimbursable where a specific explanation is provided as to the necessity for the particular research.

Other expenses which would be reimbursable would include (i) actual costs and expenses related to necessary travel, and (ii) actual copy and postage expenses where a significant task relating to the representation of the client (*e.g.,* the copying and mailing of a Chapter 11 plan, disclosure statement, and ballots to a number of creditors) is involved.

The cost reimbursement requested herein includes several small entries which may be inappropriate inasmuch as they may more accurately be characterized as general office expenses. However,

again, because this Court has not previously articulated its position on cost awards in a formal medium, the Court will allow the costs as requested, with the caveat that all future requests for cost reimbursement will be closely scrutinized, as required by the Bankruptcy Code and Rules, the case law, and as described herein.

For the reasons set forth above, Debtor's Third Application will be allowed in the amount of $19,394.15 in attorney fees plus $491.80 in costs advanced, for a total amount of $19,885.95.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###